# UNITED STATES DISTRICT COURT

Southern        DISTRICT OF        California

FILED
08 JAN 31 AM 10: 45
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Nutri-Sport
3683 Midway Drive,
San Diego, CA 92110

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

Case Number: '08 MJ 0286

I, AYOMA RUDY_____ being duly sworn depose and say:

I am a(n) Diversion Investigator, Drug Enforcement Administration _____ and have reason to believe
                Official Title

that ☐ on the person of or ☑ on the property or premises known as (name, description and/or location)

Nutri-Sport
3683 Midway Drive,
San Diego, CA 92110

in the Southern _____ District of California _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)
Bottles and/or tablets of Lipodrene believed to contain 25 mgs of Ephedrine alkaloids, and records relating to distribution of List I Chemicals and Lipodrene, and documents and records relating to HI-TECH PHARMACEUTICALS. As more fully as described in Attachment B.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of violations of Title 21, United States Code, Section §841, §822, and §830.

concerning a violation of Title 21_____ United States code, Section(s) 841, 822 and 830

The facts to support a finding of probable cause are as follows:
Please see attached documents.

Continued on the attached sheet and made a part hereof:    ☑ Yes  ☐ No

Signature of Affiant

Sworn to before me and subscribed in my presence,

1/31/08                                                   at    San Diego           CA
Date                                                           City                State

BARBARA L. MAJOR
Name of Judge U.S. MAGISTRATE JUDGE           Signature of Judge

# AFFIDAVIT

I, Ayoma Rudy being duly sworn, hereby state:

## INTRODUCTION

1. I am a Diversion Investigator (D/I) with the United States Department of Justice, Drug Enforcement Administration (DEA) and have been so employed for approximately (2 & 1/2) years. Prior to my tenure as a D/I, I have been with DEA since 1996. As a D/I, I have successfully completed an intensive 12-week Basic Diversion Investigator Training at the DEA Justice Training Center in Quantico, Virginia.

2. As a D/I, I am responsible for investigating the illegal diversion of controlled substances and listed chemicals into other than legitimate medical, scientific, and industrial channels, in violation of Title 21, United States Code. In that capacity, I have participated in investigations of registered practitioners, such as medical doctors and pharmacists, regulated persons, and others. As a D/I, I have investigated controlled substance handlers from the retail level to the manufacturing and exporting level, including the accumulation of proceeds from the sale of controlled substances and listed chemicals. In the course of my employment with DEA Diversion, I have learned that records for controlled substances and listed chemicals should be readily retrievable and maintained for two years.

3. The information contained in this affidavit is based on my investigation, my training, experience and information related to me by other law enforcement agents, my review of documents and my review of the Controlled Substance Act.

    a. There is probable cause to believe that NUTRI-SPORT (Fitness Store), a regulated seller, ie: a retail distributor, located at 7710 Balboa Avenue, San Diego, CA 92111, contains fruits, instrumentalities and evidence of a violation of Title 21, United

States Code, Sections 841(f)(2), 822 (a)(1), 830 (a)(1), 830 (a)(2), 830 (a)(3) & 830 (a)(d).

b. Searches conducted of San Diego Business Tax and California Secretary of State databases revealed that other Nutri-Sport stores in San Diego County advertised on-line appear to be individually owned with no corporate headquarters.

## PROBABLE CAUSE

4. Since this affidavit is being submitted for the limited purpose of seeking a warrant authorizing the search of the above specified property, I have not set forth each and every fact learned during the course of this investigation, nor have I summarized each and every factual circumstance deemed to be pertinent to the case. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested warrant.

## INVESTIGATION OVERVIEW

5. I am currently investigating NUTRI-SPORT, a Fitness Store involved in the sale of Lipodrene, a Dietary Supplement that contains Ephedrine Alkaloids. Ephedrine, its salts, optical isomers and salts of optical isomers is a List I Chemical. Based on my review of CHEMS, the Chemical Control Section of DEA along with other DEA databases, NUTRI-SPORT at 7710 Balboa Avenue, San Diego, CA 92111, is not registered with DEA to sell List 1 Chemicals. Additionally, the ban on dietary supplements containing ephedrine alkaloids by the U.S. Drug and Food Administration (FDA) became effective on April 12, 2004.

6. In January of 2008, an undercover purchase of Lipodrene was made by DEA agents at NUTRI-SPORT store located at 7710 Balboa Avenue, San Diego, CA 92111. DEA undercover agents purchased one bottle of Lipodrene for $70.00. There were 5 to 6 bottles visible behind the sales counter. On the bottle of Lipodrene that the

agent purchased, the label clearly indicated that the tablets in the bottle contained 25 mg ephedrine alkaloids. Each bottle contained 100 tablets and is manufactured for HI-TECH PHARMACEUTICALS. During the undercover purchase, the DEA agent noted that no identity check was conducted by the seller nor was the transaction annotated in a log. During a December 2007 telephone call made to the undercover agent that had previously purchased Lipodrene at the NUTRI-SPORT store located at 3683 Midway Drive, the owner of the Midway NUTRI-SPORT store who placed the call indicated that "his guy" "Shelton" at the Balboa NUTRI-SPORT store could get the agent about 200 bottles of Lipodrene. The Midway NUTRI-SPORT owner also indicated that he received 150 bottles of Lipodrene "each time" from "his guy" Shelton.

7. Lab Analysis by the DEA, Southwest Lab indicated each Lipodrene tablet contained 17.8 mg of l-Ephedrine. The total amount of pure drug for 100 tablets was calculated at 1.78 gms total pure drug l-Ephedrine. Forensic Chemist Dan Roesch of the DEA Southwest Lab confirmed that chemical ephedrine comes in two forms, l-ephedrine or d-ephedrine and l-ephedrine is utilized to make d-methamphetamine making d-methamphetamine a potent product sought after by drug abusers.

8. In 1999, DEA San Diego executed an Administrative Inspection Warrant at United Supplements of America (USA) for not complying with DEA regulations. United Supplements of America is the dba (doing business as) for NUTRI-SPORT located at 7710 Balboa Avenue, San Diego, CA. During the inspection, owner of USA/NUTRI-SPORT Frank Jacob stated to DEA investigators that he purchased ephedrine for producing Dymetadrine (a dietary supplement/muscle enhancer) through NUTRI-SPORT even though NUTRI-SPORT was not registered with DEA. NUTRI-SPORT was a retailer and USA was a wholesaler. USA was registered with DEA as a chemical handler and NUTRI-

1  SPORT was not registered as chemical handler therefore violating DEA regulations.  In
2  2001, USA surrendered their DEA chemical registration #0011565UEY.
3      9.   In 2006, HI-TECH PHARMACEUTICALS, a company based in Norcross,
4  Georgia was indicted (Case No 1:06-CR-382-JTC-(LTW)) for illegal importation of
5  prescription drugs, including controlled substances and introduction of adulterated and
6  unapproved drugs into the United States.  The indictment further alleges that HI-TECH
7  PHARMACEUTICALS would then fraudulently market and sell those drugs in the United
8  States.  HI-TECH PHARMACEUTICALS also manufactures and sells dietary and herbal
9  supplement products, from which it claimed approximately $29 million in sales in 2006.
10     10.  In 2006, at the request of the FDA, and a complaint filled by the U.S.
11 Attorney's Office for the Northern District of Georgia, U.S. Marshals seized dietary
12 supplements Lipodrene, Stimerex-ES, Betadrene that are labeled as containing 25 mg of
13 ephedrine alkaloids per tablet manufactured, marketed and distributed by HI-TECH
14 PHARMACEUTICALS.  Through this action, FDA in conjunction with the Department of
15 Justice prevented approximately $3,000,000 worth of products from reaching consumers
16 and endangering their health.  The U.S. Marshals seizure included more than 200 cases
17 of finished product, more than 200 boxes of bulk tablets and nine (9) 25 kilogram drums of
18 ephedrine alkaloid raw material.  Furthermore, according to the FDA a final rule declared
19 all dietary supplements containing ephedrine alkaloids adulterated, and therefore illegal for
20 marketing in the United States.  No dosage of dietary supplements containing ephedrine
21 alkaloids is safe and the sale of these products in the United States is illegal and subject to
22 FDA enforcement.
23     11.  Based upon my training, experience and my participation in other
24 investigations involving controlled substances and listed chemicals, and my discussions

with other state and federal officers, I know the following:

12. Under 21 U.S.C. §841 (f)(2), Whoever possesses any listed chemical, with knowledge that the recordkeeping or reporting requirements of section 830 of this title have not been adhered to, if after such knowledge is acquired, such person does not take immediate steps to remedy the violation shall be fined under Title 18 or imprisoned not more than one year, or both.

13. Under 21 U.S.C. §822 (a)(1), Every person who manufactures or distributes controlled substances or List I chemical, or who proposes to engage in the manufacture or distribution of any controlled substances or List I chemical, shall obtain annually a registration issued by the Attorney General in accordance with the rules and regulations promulgated by him.

14. Under 21 U.S.C. §830(a)(1), Each regulated person who engages in a regulated transaction involving a listed chemical, a tabling machine or an encapsulating machine shall keep a record of the transaction for two years after the date of the transaction.

15. Under 21 U.S.C. §830(a)(2), A record under this subsection shall be retrievable and shall include the date of the regulated transaction, the identity of each party to the regulated transaction, a statement of the quantity and form of the listed chemical, a description of the tableting machine or encapsulating machine, and a description of the method of transfer. Such record shall be available for inspection and copying by the Attorney General.

16. Under 21 U.S.C. §830(a)(3), It is the duty of each regulated person who engages in a regulated transaction to identify each other party to the transaction. It is the duty of such other party to present proof of identity to the regulated person. The Attorney

1  General shall specify by regulation the types of documents and other evidence that constitute proof of identity for purposes of this paragraph.

17. Under 21 U.S.C. §830 (d),The Combat Methamphetamine Epidemic Act (CMEA) of 2005 (Title VII of the USA Patriot Improvement and Reauthorization Act of 2005, Public Law 109-177), was signed into law March 9, 2006.  The CMEA primarily affects persons selling products containing List 1 Chemicals Ephedrine, Psuedoepedrine and Phenylpropalamine.

<u>Effective April 8, 2006</u>

a. The change to 21 U.S.C. § 830 that adds a new subsection (d) Scheduled Listed Chemicals; Restrictions on Sales Quantity; Requirements Regarding Nonliquid Forms:

i. This sets the daily sales limit of ephedrine base, psuedoephedrine base or phenylpropalamine base at 3.6 grams per purchaser, regardless of the number of transactions.

ii. Affects regulated sellers and persons required to submit mail order reports under 21 U.S.C. 830(b)(3).

iii. Requires all nonliquid forms (including gel caps) to be in 2-unit blister packs (with exceptions when blister pack is not technically feasible, the product may be in unit dosage packets or pouches).

b. The change to 21 U.S.C.§ that adds (2) Mail-Order Reporting; Verification of Identity of Purchaser; 30-Day Restriction on Quantities for Individual Purchases:

i. This requires the mail-order seller to confirm the identity of the purchaser prior to shipping the product.

ii. Limits such sales to 7.5 grams per customer during a 30-day period.

    c. The change to 21 U.S.C. § 844 (a) entitled Restrictions on Quantity Purchased During 30-Day Period:

        i. This makes it unlawful for any person to knowingly or intentionally purchase at retail more than 9 grams during a 30 day period (of which no more than 7.5 grams can be imported by private or commercial carrier or the Postal Service).

<u>Effective September 30. 2006</u>

Sales Limits

    a. A mobile retail vendor may not sell more than 7.5 grams of product per customer during a 30-day period.

Based on probable cause that evidence of the crime will be found at the location set forth below, premises are further described in Attachment A.

    a. 7710 Balboa Avenue, San Diego, CA 92111.

### THE ITEMS TO BE SEIZED

18. The items to be seized are evidence of violations of Title 21, United States Code, Section §841, §822, and §830.

    1. a. Bottles and/or tablets of Lipodrene believed to contain 25 mgs of Ephedrine alkaloids.

    b. Letters, cables, telegrams, telephone bills, address books, rolodexes, photographs, videos and documents reflecting the illegal distribution of List I Chemicals and Lipodrene.

    c. Books, records, receipts, notes, ledgers and other documents relating to the sale of all Dietary Supplements that contain Ephedrine Alkaloids.

    d. Documents and records relating to HI-TECH PHARMACEUTICALS and United Supplements of America.

## CONCLUSION

19. Based on the information as outlined herein, and on the advise, experience and knowledge of myself and other agents involved in this investigation, I believe that there is probable cause for the issuance of the requested search warrant.

*[signature]*
AYOMA RUDY
Diversion Investigator
Drug Enforcement Administration

Sworn and Subscribed to before me this 31st day of January 2008.

*[signature]*
UNITED STATES MAGISTRATE JUDGE